JS-6



**FILED**
CLERK, U.S. DISTRICT COURT

7/8/26

CENTRAL DISTRICT OF CALIFORNIA
BY: ___sr___ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERRA CLUB, a public benefit nonprofit corporation, <br><br> Plaintiff, <br><br> vs. <br><br> LASH CONSTRUCTION, INC., a California corporation, <br><br> Defendant. | Case No. 2:25-cv-06441-JFW(MAAx) <br><br> **ORDER GRANTING JOINT REQUEST FOR DISMISSAL OF COMPLAINT CLAIMS WITH PREJUDICE, ENTERING CONSENT DECREE, AND RETAINING JURISDICTION** |

The Court, having considered the Parties' joint request for dismissal of the Complaint claims with prejudice, entry of the Consent Decree, and retention of jurisdiction, and finding good cause therefor, hereby GRANTS the request and ORDERS as follows:

1. Plaintiff Sierra Club's claims against Defendant Lash Construction, Inc. that are set forth in the Notice of Violations and Intent to File Suit and Complaint filed in this action, are hereby dismissed in their entirety with prejudice.

2. The Court shall retain jurisdiction over the Parties for purposes of dispute resolution and enforcement of the Consent Decree.

3. The Consent Decree, attached hereto as **Exhibit A**, is fully incorporated by reference herein.

IT IS SO ORDERED.

Dated: July 8, 2026

HON. JOHN F. WALTER
UNITED STATES DISTRICT JUDGE

1

JESSE C. SWANHUYSER (BAR NO. 282186)
jesse@sycamore.law
KRISTINA M. HAMBLEY (BAR NO. 352499)
kristina@sycamore.law
SYCAMORE LAW, INC.
1004 O'Reilly Avenue
San Francisco, CA 94129
Phone: (415) 360-2962

Attorneys for Plaintiff
SIERRA CLUB

EMILY L. MURRAY (BAR NO. 223815)
emurray@allenmatkins.com
GARRETT L. JANSMA (BAR NO. 261825)
gjansma@allenmatkins.com
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816

Attorneys for Defendant
Lash Construction, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERRA CLUB, a public benefit nonprofit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>LASH CONSTRUCTION, INC., a California corporation,<br><br>Defendant. | Case No. 2:25-cv-06441-JFW-MAAx<br><br>**CONSENT DECREE**<br><br><br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq.) |

## CONSENT DECREE

**WHEREAS,** Plaintiff Sierra Club ("Sierra Club" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment and natural resources, including waters of the United States;

**WHEREAS**, Defendant Lash Construction, Inc. ("Lash" or "Defendant") leases and operates the Lash Construction Recycle Facility located at 5 South Calle Cesar Chavez, Santa Barbara, California 93103 (the "Facility");

**WHEREAS,** storm water discharges associated with industrial activity at the Facility are regulated by the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* (the "Clean Water Act" or "CWA") and California's Industrial General Permit for storm water discharges associated with industrial activity (NPDES General Permit No. CAS000001) (the "IGP" or "General Permit")[1];

**WHEREAS,** on May 1, 2025, Plaintiff issued a Notice of Violation and Intent to File Suit Under the Clean Water Act (the "60-Day Notice Letter") on Defendant, its registered agent, the Attorney General and United States Department of Justice ("U.S. DOJ"), the Administrator of the United States Environmental Protection Agency ("U.S. EPA"), the Regional Administrator of U.S. EPA Region IX, the Executive Director of the State Water Resources Control Board ("State Water Board"), and the Executive Officer of the Central Coast Regional Water Quality Control Board ("Regional Water Board") alleging violations of the Act and IGP at the Facility;

**WHEREAS,** on July 15, 2025, Plaintiff filed a complaint alleging violations of the General Permit and the CWA at the Facility (the "Complaint");

---

[1] Any references to the "IGP" or "General Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms, e.g., a change to Design Storm standard. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, e.g., the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

**WHEREAS,** Defendant denies Plaintiff's allegations in the 60-Day Notice Letter and the Complaint and any liability; and

**WHEREAS,** Plaintiff and Defendant (collectively, the "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into this Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331.

2. Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations occurred is located within this District.

3. The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4. Sierra Club has standing to bring this action.

5. The Court shall retain jurisdiction over this action for the Term for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, and adjudicating any disputes among the Parties that may arise under the provisions of this Consent Decree or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised prior to the Termination Date (as defined below). The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

**I.  OBJECTIVES**

6. It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues

CONSENT
DECREE

alleged by Sierra Club in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all applicable terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7. In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, applicable terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

8. This Consent Decree constitutes a full and final settlement of this matter.

## II. AGENCY REVIEW AND DEFINITIONS

### A. AGENCY REVIEW OF CONSENT DECREE

9. Agency Review. Plaintiff shall submit this Consent Decree to U.S. DOJ and U.S. EPA (collectively, the "Federal Agencies") for agency review, consistent with 40 C.F.R. § 135.5, within three (3) business days of the Effective Date (defined at Paragraph 13(k)). The "Agency Review Period" shall expire forty-five (45) calendar days after receipt by the Federal Agencies ("Agency Review Date"). In the event the Federal Agencies object to this Consent Decree, the Parties agree to meet and confer to attempt to resolve the objection(s) raised.

10. Court Notice. Within three (3) business days of the Effective Date of this Consent Decree, Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5.

11. Entry of Consent Decree. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

12. Case Dismissal. Within ten (10) court days of the Entry Date, Plaintiff shall file a Stipulation to Dismiss with Prejudice and [Proposed] Order ("Stipulation and Order") pursuant to Federal Rule of Civil Procedure 41(a)(2) with the District Court with this Consent Decree attached and incorporated by reference, specifying

CONSENT
DECREE

that Plaintiff is dismissing with prejudice all claims in its Complaint. The Stipulation and Order shall state the District Court will maintain jurisdiction over the Settling Parties for the sole purpose of resolving disputes regarding the Settling Parties' compliance with this Consent Decree through the later of: (i) the Termination Date; (ii) the conclusion of any proceeding to enforce this Consent Decree initiated prior to the Termination Date (defined at Paragraph 13(dd)); or (iii) the completion of any payment or affirmative duty required by this Consent Decree. The date the District Court signs the Stipulation and Order shall be the "Dismissal Date."

### B.    DEFINITIONS

13.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meanings assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a.  "Advanced Treatment System" means an engineered or structural stormwater treatment system, including associated stormwater collection and conveyance infrastructure, designed and installed to achieve compliance with BAT and BCT requirements, as set forth in the IGP, for the reduction or prevention of one or more parameters identified in Paragraph 16 in industrial stormwater discharges at the Facility. The design of any Advanced Treatment System shall be tailored to relevant site-specific conditions (e.g., particle size range, suite of target pollutants, including metals) and *may* include one or more of the following technologies (or a technology/technologies of equivalent effectiveness): sedimentation-based systems, filtration-based systems (e.g., engineered media or bioretention soil mix), polymer-assisted coagulation, electrocoagulation, or other chemical dosing, used singly or in combination, as further described in the Implementation Plan prepared pursuant to Paragraph 34.

CONSENT DECREE

b.   "BAT" means the Best Available Technology Economically Achievable.

c.   "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

d.   "Best Management Practice" or "BMP" is defined and used herein as the term is defined and used in the IGP;

e.   "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

f.   "Consent Decree Exceedance" or "CD Exceedance" means, for the Facility, one or more NAL Exceedances for any parameter identified in Paragraph 16 that are demonstrated by Defendant's sampling results in the 2027-2028 Reporting Year (July 1, 2027 through June 30, 2028), or any Reporting Year thereafter during the Term of this Consent Decree, for which Defendant has not achieved a successful NISD pursuant to Paragraph 28. A CD Exceedance shall be determined in accordance with Paragraph 33.

g.   "Cost Cap" means the amount of $300,000 for Defendant's reasonable, documented costs to physically design, procure, construct, install, and commission an Advanced Treatment System required under this Consent Decree. Defendant shall make every reasonable effort to limit costs, including without limitation by performing all design and construction work that is within its professional capabilities and identifying, and securing an appropriate land use agreement for access to, an adequate above-ground location per Paragraph 34.f.

h.   "Day" means a calendar day; where the last day falls on a Saturday, Sunday, or federal or California holiday, the period extends to the next business day.

i.   "Design Storm" means the volume and flow rate of runoff produced from a design storm as defined by General Permit Section X.H.6, or as otherwise described herein and established in and by the Implementation Plan for the Facility.

-6-

CONSENT DECREE

j.   "Discharge Point" means each location where stormwater is discharged as designated in the then-current SWPPP or MIP for the Facility.

k.   "Effective Date" means the date of execution as evidenced by the last signature of the Settling Parties.

l.   "Entry Date" means the day this Consent Decree is entered by the Court.

m.   "Exceedance" means an exceedance of a Numeric Action Level as defined in the General Permit's § XII.A.

n.   "Final Completion" means, with respect to an Advanced Treatment System, the point at which all of the following conditions have been satisfied: (i) construction of the Advanced Treatment System is complete; (ii) the system has been tested and commissioned; (iii) the system has been continuously operational for a minimum of ninety (90) days; and (iv) sample data from at least one Qualifying Storm Event demonstrates pollutant concentrations meeting applicable NALs in the IGP's Table 2. Notwithstanding the foregoing, Final Completion shall be deemed to have occurred on the date Defendant demonstrates that the Cost Cap has been reached in good faith implementation of the Final Implementation Plan.

o.   "Final Implementation Plan" means the Implementation Plan, as revised following Plaintiff's review pursuant to Paragraph 35 to incorporate Plaintiff's Recommendations (if any) or accompanied by Defendant's written rationale explaining why any Recommendations were not accepted or incorporated. The Final Implementation Plan shall govern the design, permitting, and installation schedule for the Advanced Treatment System at the Facility, subject to the Cost Cap.

p.   "Forecasted Rain Event" means a forecasted rain event with a fifty percent (50%) or greater chance of precipitation of 0.1 inches or more at least 48 hours in advance of the expected precipitation with minimum antecedent dry period of 72 hours prior to the beginning of the rain event as determined by the National

CONSENT DECREE

Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for Santa Barbara, California.

q. "Implementation Plan" means the work plan submitted by Defendant to Plaintiff pursuant to Paragraph 34, setting forth a proposed schedule for designing and installing an Advanced Treatment System, including stormwater collection and conveyance, to address the exceeding parameter(s) from all industrial stormwater Discharge Points at the Facility where a CD Exceedance has occurred. The Implementation Plan shall include the elements specified in Paragraph 34(a) through 34(f).

r. "MIP" means Monitoring Implementation Plan as defined in the General Permit's § X.I.

s. "Non-Industrial Source Demonstration" or "NISD" means a technical analysis, prepared by a licensed professional engineer and submitted via SMARTS as part of an ERA Technical Report, demonstrating that the presence of a pollutant causing a NAL exceedance is attributable solely to pollutants originating from non-industrial pollutant sources. Any NISD must fully comply with General Permit Section XII.D.2.b.

t. "Notice of Termination" or "NOT" has the meaning set forth in the IGP.

u. "Numeric Action Levels" or "NALs" has the meaning set forth in the IGP and includes, as applicable, instantaneous maximum and annual average NALs used to evaluate monitoring results for purposes of determining ERA status under the IGP.

v. "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

w. "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

CONSENT
DECREE

x. "Reporting Year" means July 1 through June 30, unless otherwise defined by the IGP.

y. "Sampling Point(s)" means Discharge Points designated in the Facility's SWPPP or MIP as the location(s) for storm water sample collection.

z. "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

aa. "Source Separated" means materials that have been separated or kept separate from the solid waste stream, at the point of generation, for the purpose of additional sorting or processing those materials for recycling or reuse, consistent with 14 CCR § 17402.5(b)(4). This definition shall be replaced if a definition of the term is issued or adopted by the State Board or Regional Board applicable to facilities subject to CWA-based industrial stormwater regulation, e.g., as part of a reissued IGP.

bb. "SWPPP" means Defendant's Storm Water Pollution Prevention Plan required by the IGP.

cc. "Term" means the period between the Entry Date and the "Termination Date."

dd. "Termination Date" means June 30, 2029 (the "Initial Term"); provided, however, that if an Advanced Treatment System is required pursuant to Section III.H of this Consent Decree and has not achieved Final Completion on or before June 30, 2029, the Termination Date shall be extended to the earlier of: (A) one (1) year following the date of Final Completion of such Advanced Treatment System; or (B) June 30, 2030. In no event shall the Termination Date extend beyond June 30, 2030.

## III.   COMMITMENTS OF THE SETTLING PARTIES

### A.   COMPLIANCE WITH THE IGP AND SWPPP

14. Defendant shall comply with all terms and conditions of the IGP during the Term, including, without limitation, the prohibition on unauthorized non-storm

water discharges, and shall implement and comply with its SWPPP and MIP, as revised consistent with the IGP and this Consent Decree.

15. Defendant shall ensure that no discharge of stormwater associated with industrial activity occurs from any location at the Facility other than the Discharge Points designated in the then-effective SWPPP or MIP for the Facility.

### B. PARAMETERS AT ISSUE

16. During the Term, Defendant shall monitor for the following parameters at the Facility: pH, TSS, O&G, Al, Cu, Zn.

17. The Parties dispute whether aluminum, copper, and zinc are industrial pollutants associated with Defendant's operations. For purposes of this Consent Decree, however, Defendant shall monitor for aluminum, copper, and zinc as set forth above.

### C. SWPPP AND MIP REVISION

18. Defendant shall review and, as necessary, revise the Facility's SWPPP and MIP to ensure each document complies with the IGP and reflects current site conditions, Discharge Points, Sampling Points, drainage areas, industrial activities, pollutant source assessment, BMPs, monitoring protocols and methods, and IGP-required procedures.

19. Defendant shall provide the revised SWPPP and MIP required by Paragraph 18 to Plaintiff within thirty (30) days of the Effective Date for review and comment. Plaintiff shall provide comments (if any) within thirty (30) days of receiving the revised SWPPP and MIP. Within thirty (30) days of receiving Plaintiff's comments, Defendant shall either incorporate the comments into the revised SWPPP and MIP or provide Plaintiff with a written explanation of why any comment was not incorporated. Within fourteen (14) days thereafter, Defendant shall upload the final revised SWPPP and MIP to SMARTS.

/ / /

/ / /

**D.   SAMPLE COLLECTION AND ANALYSIS**

20.   Defendant shall collect samples as required by the IGP, including the number, timing, and method prescribed by the IGP for Qualifying Storm Events and for any required dry weather or non-stormwater observations. Sampling shall comply with the IGP, be representative of industrial storm water discharges, and collected, at a minimum, from designated Sampling Point(s) as runoff allows.

21.   Defendant agrees that, during the Term, Defendant shall not seek to implement a Compliance Group for sampling and reporting purposes for the Facility, as that term is defined in IGP Section XIV.

**E.   CURRENT AND ADDITIONAL BMPS**

22.   At all times, Defendant shall implement BMPs identified in the Facility's SWPPP and BMPs described herein, including without limitation: ensuring no industrial activity occurs in areas designated as non-industrial, and ensuring no commingling of storm water associated with industrial activity and storm water discharged from areas designated as non-industrial.

23.   Defendant shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit, including without limitation BMPs to minimize and remove material tracking onto South Calle Cesar Chavez consistent with General Permit § X.1.e.iii.

24.   Defendant shall effectively prohibit the receipt of any material at the Facility that does not meet the definition of Source Separated. Defendant's acceptance of non-Source Separated materials at the Facility constitutes a violation of this Consent Decree and the IGP.

**F.   VISUAL OBSERVATIONS AND HOUSEKEEPING**

25.   Defendant shall conduct visual observations and monthly non-storm water observations as required by the IGP, including, without limitation, observations at Discharge Points, outdoor industrial equipment and storage areas, areas of industrial activity, and BMPs.

26.     Observations and records shall be retained as required by the IGP and made available to Plaintiff upon request consistent with Section V (Documents and Reporting).

## G.     EXCEEDANCE RESPONSE ACTION OBLIGATIONS

27.     Defendant shall determine its compliance status and any Exceedance Response Action ("ERA") triggers consistent with the IGP using the parameters identified in Paragraph 16. Exceedances will be evaluated against the applicable NALs. Defendant shall fulfill all ERA process requirements under the General Permit, including but not limited to submitting all required ERA reports, Action Plans, and Technical Reports to SMARTS.

28.     Non-Industrial Source Demonstration (NISD). For each parameter at ERA Level 1 status, Defendant may evaluate whether a NISD pursuant to General Permit Section XII.D is appropriate. If Defendant determines that an NISD is appropriate for any parameter, Defendant may pursue such demonstration and submit all required documentation to SMARTS. An NISD shall be deemed "successful" for purposes of this Consent Decree if the State Water Board or Regional Water Board does not object to the demonstration within ninety (90) days for the applicable parameter. Any subsequent, contrary determination or policy by the Regional Water Board or State Water Board shall apply upon the adoption or effective date.

29.     Ongoing ERA Obligations. The Facility is currently in IGP Exceedance Response Action Level 1 status for pH, total suspended solids, chemical oxygen demand, aluminum, iron, and zinc pursuant to Section XII.C. Throughout the Term of this Consent Decree, Defendant shall comply with all ERA requirements under the General Permit, including but not limited to:

a.   Submitting all required Level 1 ERA Reports, Level 2 ERA Action Plans, and Level 2 ERA Technical Reports to SMARTS within the deadlines established by the General Permit. Lash may not seek or make use of the extensions

CONSENT DECREE

to the default deadlines General Permit § XII.D.5 except for reasons beyond its reasonable control, e.g., unavailability of materials or contractors;

b.   Implementing all BMPs and corrective actions identified in ERA Reports and Action Plans; and

c.   Documenting all ERA-related activities in the Facility's SWPPP and Annual Reports.

30.   If Defendant submits an acceptable NISD or achieves Baseline status for any parameter previously at ERA Level 1 or ERA Level 2 status through (a) implementation of BMPs that eliminate NAL exceedances for four consecutive Qualifying Storm Events, or (b) any other mechanism authorized by the General Permit, the obligations under Paragraphs 33 through 37 shall not apply to such parameter unless a CD Exceedance subsequently occurs for that parameter.

31.   Any ERA submittals, schedules, and implementation shall strictly follow the IGP requirements, timelines, and content. Nothing herein shall impose numeric effluent limitations or measures beyond those required by then-effective version of the IGP.

32.   Defendant shall provide Plaintiff with draft ERA reports or plans (if any) for review and comment at least thirty (30) days before the applicable IGP filing deadline. Plaintiff shall provide comments (if any) within ten (10) days of receiving the draft report or plan. Within ten (10) days of receiving Plaintiff's comments, Defendant shall either incorporate the comments into the draft ERA report or provide Plaintiff with a written explanation of why any comment was not incorporated. Defendant shall file the final ERA report or plan via SMARTS no later than the applicable IGP filing deadline, regardless of whether any dispute regarding Plaintiff's comments remains unresolved.

/ / /

/ / /

/ / /

CONSENT DECREE

-13-

**H.    CONSENT DECREE EXCEEDANCES AND ADVANCED TREATMENT SYSTEMS**

33.    <u>Consent Decree Exceedance Trigger</u>. If Defendant's sampling results establish a CD Exceedance at the Facility, and Defendant has not achieved a successful NISD for such parameter pursuant to Paragraph 28, and Defendant has not already submitted an approved Implementation Plan that addresses the drainage area(s) and pollutant(s) for which the CD Exceedance occurred, Defendant shall comply with the requirements of Paragraphs 34 through 37 below.

34.    <u>Implementation Plan</u>. Within thirty (30) days following the end of the Reporting Year in which a CD Exceedance occurs (i.e., by July 31), Defendant shall submit to Plaintiff an Implementation Plan with a proposed schedule for designing and installing an Advanced Treatment System, including stormwater collection and conveyance, to address the exceeding parameter(s) from all industrial stormwater Discharge Points at the Facility where such exceedance(s) occurred. The Implementation Plan shall be designed and scoped in a manner consistent with the Cost Cap set forth in Paragraph 36, and Defendant shall not be required to propose an Advanced Treatment System whose total anticipated cost exceeds the Cost Cap. The Implementation Plan shall include, at minimum:

a.    Identification of the proposed Advanced Treatment System;

b.    A demonstration that the proposed Advanced Treatment System is sized to accommodate at least the Design Storm;

c.    A Technical Report that evaluates the following factors:

A.    The extent to which the pollution reduction technology in the proposed Advanced Treatment System, including those identified in subparagraph 13(a), is necessary and/or appropriate given site-specific target pollutants and conditions, including as appropriate with bench scale and related analyses of storm water discharges from the Facility;

B.   To the extent available, independent performance data demonstrating the system's effectiveness at reducing the site-specific target pollutants of concern at the Facility to IGP action-level concentrations;

C.   Media flexibility, addressing the fitness of the treatment media to address the site-specific target pollutants, including the ability to substitute or modify media types tailored to site-specific target pollutants;

D.   Modularity/flexibility of the treatment configuration, including where practicable, a system design that allows for scalability and adaptation to changing site conditions (for example, discrete settling/separation and filtration units, or functionally modular combined units) to facilitate siting, phased additions, and future media changes if warranted;

E.   Adequate operation and maintenance procedures to ensure long-term system performance, including availability of vendor support for commissioning, training, and ongoing maintenance.

d.   If limited treatment locations, sizing, or pollutant removal are proposed, technical justification shall be provided that is consistent with IGP Level 2 ERA requirements in Section VII.D.2.a. Such justification shall include an evaluation of site-specific engineering and logistical factors, including but not limited to: ability to provide electrical power; local permitting requirements; potential utility conflicts; potential excavation constraints (including potential for encountering subsurface contamination, debris, bedrock, or shallow groundwater); potential disruptions to Facility operations during construction (including impacts to critical ingress/egress); and phasing of construction.

e.   A proposed schedule for completing design, obtaining any necessary permits, and installing the Advanced Treatment System, which schedule shall take into account operational and Facility logistical constraints.

f.   An evaluation of the feasibility of siting the Advanced Treatment System, or components thereof, above ground on property adjacent to the Facility,

including consideration of: (i) applicable land use, permitting, and legal requirements; (ii) availability of adequate electrical power; (iii) operational and logistical constraints; and (iv) the willingness of the adjacent property owner to grant access on commercially reasonable terms. Nothing in this subparagraph shall be construed to impose any obligation on any third party not a signatory to this Consent Decree or to require Defendant to enter into any agreement that would violate applicable law.

35.     Plaintiff Review. Plaintiff shall provide Defendant with written recommendations ("Recommendations"), if any, to the Implementation Plan within thirty (30) days of Plaintiff's receipt of the complete Implementation Plan. Within thirty (30) days of Defendant's receipt of the Recommendations, if any, Defendant shall incorporate Plaintiff's Recommendations into the Implementation Plan or, alternatively, provide a separate written rationale explaining why any of the Recommendations were not accepted or incorporated, and provide a Final Implementation Plan to Plaintiff. Plaintiff's Recommendations shall be guided by the evaluation factors in Paragraph 34(c) and by consistency with the IGP.

36.     Implementation. Subject to events of Force Majeure pursuant to Paragraph 66 below, if the CD Exceedance trigger in Paragraph 33 is satisfied, Defendant shall install the Advanced Treatment System identified in the Final Implementation Plan as soon as reasonably possible on the schedule identified therein. Defendant's obligation under this Paragraph shall not exceed the Cost Cap. The Implementation Plan shall address the technical specifications, Cost Cap, and implementation schedule for such installation; it shall not be used to evaluate whether installation is required, which is determined solely by the trigger conditions in Paragraph 33.

37.     Status Reports. Defendant shall provide written quarterly status reports to Plaintiff ("Status Reports") on the engineering, design, permitting, construction, testing, and operation of any Advanced Treatment System beginning in the quarter

following the Implementation Plan becoming final and continuing until Final Completion is achieved.

## IV.    PLAINTIFF'S COMPLIANCE MONITORING

38.    Site Inspection. Every year during the Term, Plaintiff may conduct one annual site inspection for the purpose of assessing compliance with this Consent Decree and the IGP. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Settling Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection at Plaintiff's request. Any inspection shall occur during normal business hours, with at least five (5) days' notice for dry weather and forty-eight (48) hours' notice for wet weather inspections. For any wet weather inspection, Plaintiff may adjust timing in good faith if forecast changes frustrate the purpose of a wet weather inspection. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 67.

39.    Inspection Sampling. During any wet weather inspection when a discharge is occurring at a designated industrial discharge point, Plaintiff may request that Defendant collect a duplicate sample or samples, and submit such samples to a certified laboratory for analysis consistent with Paragraphs 20 to 21. Plaintiff shall bear all costs associated with the laboratory analysis of any such duplicate samples. Any duplicate samples collected at Plaintiff's request are for informational purposes only and shall not be used to establish exceedances, NAL evaluations, ERA triggers, or violations under this Consent Decree or the IGP.

40.    Photographs. Plaintiff may take photographs or video of storm water management areas, discharge point(s), and BMPs during an inspection solely for the purpose of assessing compliance with the CWA and IGP.

## V.    DOCUMENTS AND REPORTING

41.    During the Term, Defendant shall:

CONSENT DECREE

a.   Within five (5) business days after any upload by Defendant to SMARTS of a document related to IGP storm water compliance for the Facility (including the SWPPP, MIP, sampling results, Annual Reports, and any ERA submittals), notify Plaintiff by email that such document(s) have been uploaded to SMARTS and are available for download, including the applicable document id number(s);

b.   Within five (5) business days of Defendant's receipt, provide Plaintiff with copies of written communications related to storm water quality at the Facility that are received from the State Water Board or the Regional Water Board and that are not otherwise accessible to Plaintiff via SMARTS.

c.   No other document-production obligations are imposed by this Consent Decree, and Defendant shall have no obligation to compile, re-format, or create documents beyond what is required by the IGP.

## VI.   STIPULATED COMPLIANCE WITH IGP-BASED SCHEDULES

42.   Where this Consent Decree references performance or submittal according to the IGP (e.g., ERA schedule, Annual Report deadlines, sampling timelines), the Parties agree that the IGP's provisions govern, and a failure to meet an IGP deadline shall be addressed through the IGP and the Dispute Resolution procedures herein, without altering the IGP's substantive requirements.

## VII.   ENVIRONMENTAL MITIGATION PROJECT, PLAINTIFF'S FEES AND COSTS, AND COMPLIANCE MONITORING PAYMENTS.

43.   Supplemental Environmental Project (Environmental Mitigation Project). To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution in the receiving waters and in lieu of payments of any penalties, which have been disputed by Defendant but may have been assessed had this action been adjudicated in a manner adverse to Defendant, Defendant shall make a payment totaling twenty thousand dollars ($20,000) (the "Environmental

Mitigation Payment"). The Environmental Mitigation Payment shall be payable in three (3) equal annual installments, with the first installment due on the first (1st) day of the second full calendar month following the Effective Date, and the remaining two installments due on the first (1st) day of the same calendar month in each of the next two (2) years, such that the total is paid in full within the three-year Term. Each installment shall be made payable to Heal the Ocean and sent via overnight mail to P.O. Box 90106, Santa Barbara, California 93190 (or by ACH/wire per written instructions provided by the recipient). Failure to submit any installment as required under this Paragraph will constitute breach of the Consent Decree, subject to the notice and cure provisions in Paragraph 46.

44. <u>Plaintiff's Fees and Costs</u>. Defendant shall pay a total of one hundred fifteen thousand dollars ($115,000) to Plaintiff to partially reimburse Plaintiff for investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter. The total shall be payable in two (2) equal installments, with the first installment due thirty (30) days after the Effective Date, and the second installment due on or before December 31, 206, such that the total is paid in full in 2026. Each installment shall be made payable to Sycamore Law, Inc. and delivered by overnight carrier to 1004 O'Reilly Avenue San Francisco, Cal. 94129 (or by ACH/wire per written instructions provided by Plaintiff). Failure to submit any installment as required under this Paragraph will constitute breach of the Consent Decree, subject to the notice and cure provisions in Paragraph 46.

45. <u>Compliance Monitoring Payment</u>. To defray Plaintiff's reasonable costs of monitoring Defendant's compliance with this Consent Decree, including but not limited to reviewing documents and data posted to SMARTS, reviewing correspondence and reports, conferring with Defendant regarding compliance, participating in meet-and-confer and dispute-resolution processes, and, if necessary, seeking to enforce the Consent Decree, Defendant shall pay a total of fifteen

thousand dollars ($15,000) (the "Compliance Monitoring Payment"). The Compliance Monitoring Payment shall be payable in three (3) equal annual installments, with the first installment due on the first (1st) day of the second full calendar month following the Effective Date, and the remaining two installments due on the first (1st) day of the same calendar month in each of the next two (2) years, such that the total is paid in full within the Term. Each annual installment shall be made payable to Sycamore Law, Inc. and delivered by overnight carrier to 1004 O'Reilly Avenue San Francisco, Cal. 94129 (or by ACH/wire per written instructions provided by Plaintiff). Plaintiff shall provide a completed IRS Form W-9 (or successor form) upon request. The Compliance Monitoring Payment is separate from and in addition to the Environmental Mitigation Payment (Paragraph 43) and Plaintiff's Fees and Costs (Paragraph 44). Failure to submit any installment as required under this Paragraph constitutes breach of the Consent Decree, subject to the notice and cure provisions in Paragraph 46.

**VIII.  DISPUTE RESOLUTION**

46.     Unless otherwise provided herein, any dispute between the Parties regarding compliance with or interpretation of the terms of this Consent Decree, including but not limited to disputes regarding unincorporated comments or recommendations to any document submitted for Plaintiff's review, shall be resolved in accordance with the following procedures:

a.     <u>Meet and Confer</u>. Prior to seeking judicial relief, a Party shall provide written notice of the matter(s) in dispute and the disputing Party's proposed resolution. The Parties shall meet and confer in good faith (telephonically or in person) within ten (10) days of the notice and shall attempt to resolve the dispute within thirty (30) days of the notice.

b.     <u>Judicial Resolution</u>. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in subparagraph (a), the Parties agree that the dispute may be submitted for formal

resolution by filing a motion before the United States District Court for the Central District of California. Either Party may, at its sole discretion, request expedited review.

c.    In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## IX.    EARLY TERMINATION

47.    Term. The Term and Termination Date of this Consent Decree shall be as set forth in Section II.B above.

48.    Early Termination Upon NOT or Cessation of Operations. This Consent Decree shall terminate prior to the end of the Term upon the earliest of (a) Defendant's receipt of agency approval of a NOT for the Facility, together with written notice and supporting documentation provided to Plaintiff; or (b) Defendant's permanent cessation of all industrial operations at, and complete vacatur and surrender of possession of, the Facility, provided that within ten (10) days of such cessation and vacatur Defendant: (i) files in SMARTS a NOT; (ii) provides Plaintiff with written notice of the cessation and vacatur and reasonable documentation thereof; and (iii) implements any stabilization, housekeeping, and decommissioning measures required by the IGP for cessation/termination. In either case, and provided all accrued obligations under this Consent Decree have been satisfied, termination shall be effective ten (10) days after Plaintiff's receipt of the applicable notice and documentation described above.

49.    Notwithstanding the foregoing, obligations that accrued prior to the effective Termination Date (including payment obligations under Section VII and any pending dispute under Section VIII) shall survive solely to the extent necessary to effectuate payment and resolve such dispute.

## X.   MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

50.   <u>Plaintiff's Waiver and Release</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

51.   <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

52.   <u>Waiver of California Civil Code § 1542</u>. Upon the Effective Date, the Parties further expressly waive any rights or benefits available to them under the provisions of <u>California Civil Code § 1542</u>. The parties acknowledge they are familiar with section 1542 of the California Civil Code, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY." While a Party may assert that <u>California Civil Code section 1542</u> applies to general releases only, and that releases herein are limited releases, the Parties hereby waive and relinquish any rights or benefits they may have under <u>California Civil Code section 1542</u> with respect to any other claims

CONSENT DECREE

arising from the allegations and claims as set forth in the 60-Day Notice Letter, and/or Complaint, up to and including the Termination Date of this Consent Decree.

53. Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Water Board, Regional Water Board, the U.S. EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act (a) occurring or arising after the expiration or termination of this Consent Decree, or (b) occurring during the Term but not addressed by or subject to the compliance framework set forth in this Consent Decree. For the avoidance of doubt, during the Term, Plaintiff's remedy for any alleged non-compliance with obligations set forth in this Consent Decree shall be enforcement of this Consent Decree pursuant to the dispute resolution and enforcement provisions herein. Enforcement of this Consent Decree is Plaintiff's exclusive remedy for any violation of its terms, including any subsequent violation of the General Permit, or any successor, modified, or replacement permits, occurring prior to Termination Date.

## XI.   MISCELLANEOUS PROVISIONS

54. <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. The Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

55. <u>Counterparts</u>. This Consent Decree may be executed in counterparts, and by electronic signatures, each of which shall be deemed an original and constitute one and the same instrument.

56. **Applicability and Binding Effect**. The provisions of this Consent Decree apply to and bind Plaintiff and Defendant, including any successors or assigns. The Parties certify that each undersigned representative is fully authorized to enter into this Consent Decree and legally bind the Party represented.

57. **Construction**. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the IGP, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

58. **Full Settlement**. This Consent Decree constitutes a full and final settlement of this matter.

59. **Integration Clause**. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the Consent Decree between the Parties and expressly supersedes any and all prior oral or written Consent Decrees, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

60. **Severability**. If any provision of this Consent Decree is held invalid, the remaining provisions shall remain in full force and effect.

61. **Choice of Law**. The laws of the United States shall govern this Consent Decree.

62. **Effect of Consent Decree**. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

63. **Negotiated Settlement**. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

64.     Modification. This Consent Decree may be modified only by a writing signed by both Parties. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

65.     Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

66.     Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations, permits, or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

67.     Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, to the extent feasible,

sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Plaintiff: | If to Defendant: |
|---|---|
| Jesse Swanhuyser | Emily L. Murray |
| Sycamore Law, Inc. | Allen Matkins Leck Gamble Mallory |
| 1004 O'Reilly Avenue | & Natsis LLP |
| San Francisco, CA 94129 | 865 S. Figueroa St Ste 2800, Los |
| jesse@sycamore.law | Angeles, CA 90017 |
| | emurray@allenmatkins.com |

| With Copies to: | With Copies to: |
|---|---|
| Katie Davis, Legal Coordinator | Alan Lash, Vice-President |
| Sierra Club | P.O. Box 4640 |
| kdavis2468@gmail.com | Santa Barbara, CA 93103 |
| | alan@lashconstruction.com |

68.    Each Party may change its designated contact for notices by providing written notice to the other Party at least fourteen (14) days prior to the effective date of such change. Any notice sent to the last designated contact prior to receipt of a change notice shall be deemed effective.

69.    Notices are deemed received on the date of email transmission if sent during business hours, or the next business day if sent after business hours, and in any event no later than three (3) days after the date that they are postmarked and sent by first-class mail.

70.    If for any reason the Federal Agencies or the District Court should object to this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

CONSENT DECREE

-26-

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date last set forth below.

APPROVED AS TO CONTENT

Dated: May 22, 2026     LASH CONSTRUCTION, INC.

By: _____
Alan Lash, Vice-President

Dated: May 22, 2026     SIERRA CLUB

By: _____
Katie Davis, Legal Coordinator

APPROVED AS TO FORM

Dated: May 22, 2026     ALLEN MATKINS

By: _____
Attorneys for Defendant
Lash Construction, Inc.

Dated: May 22, 2026     SYCAMORE LAW, INC.

By: _____
Attorneys for Plaintiff
Sierra Club

**IT IS SO ORDERED.**

**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated: July 8, 2026 _____
Hon. John F. Walter
Judge, United States District Court

CONSENT DECREE

-27-